UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CR18-197 PAM/HB

| | |
|---|---|
| UNITED STATES OF AMERICA | **INDICTMENT** |
| Plaintiff, | 18 U.S.C. § 1349 |
| | 18 U.S.C. § 1341 |
| v. | 18 U.S.C. § 1343 |
| | 18 U.S.C. § 2 |

1. DETLOFF MARKETING AND
   ASSET MANAGEMENT, INC.,
   a/k/a DMAM,
   a/k/a Detloff Marketing,
   a/k/a Detloff Management,
   a/k/a Detloff Marketing &
   Management,
   a/k/a Jeff Detloff Marketing &
   Management,
   a/k/a Jeff Detloff Marketing,
   a/k/a Detloff Asset Management,
   a/k/a Detloff Asset,
   a/k/a Detloff Asset & Marketing,
   a/k/a Detloff Asset &
   Management,
2. JEFFERY J. DETLOFF,
   a/k/a Jeffrey J. Detloff, and
3. LORI K. DETLOFF,

    Defendants.

THE UNITED STATES GRAND JURY CHARGES THAT:

**INTRODUCTION**

1.      From at least in or about September 2007 and continuing through at least in or about June 2015, in the State and District of Minnesota and elsewhere, Defendants **JEFFERY J. DETLOFF** (hereafter "**JEFF DETLOFF**") and **LORI K. DETLOFF** (hereafter "**LORI DETLOFF**"), and others known and unknown to the Grand Jury, all acting within the scope of their agency and employment, and for the benefit of Defendant

SCANNED
AUG 15 2018
U.S. DISTRICT COURT MPLS

U.S. v. DETLOFF MARKETING AND ASSET MANAGEMENT, INC., *et al.*

**DETLOFF MARKETING AND ASSET MANAGEMENT, INC.** (hereafter "**DETLOFF MARKETING**"), engaged in a scheme and artifice to defraud the VICTIM COMPANIES by soliciting and receiving kickbacks, and submitting false and fraudulent bids and invoices to the VICTIM COMPANIES, all in connection with Real Estate Owned ("REO") properties owned or controlled by the VICTIM COMPANIES. Any reference in this Indictment to "the **DETLOFFS**" means **JEFF DETLOFF** and **LORI DETLOFF** collectively.

2. The VICTIM COMPANIES included the Federal National Mortgage Association, commonly known as Fannie Mae, and the Federal Home Loan Mortgage Corporation, commonly known as Freddie Mac. The VICTIM COMPANIES also included entities that are financial institutions within the meaning of 18 U.S.C. § 20. The VICTIM COMPANIES are all businesses that own or otherwise have an interest in REO properties, also known as foreclosures.

3. The **DETLOFFS** induced others, known and unknown to the Grand Jury, to participate in the scheme and artifice to defraud the VICTIM COMPANIES by making payments to **DETLOFF MARKETING** and the **DETLOFFS** in exchange for receiving or continuing to receive repair and maintenance work on properties owned or controlled by the VICTIM COMPANIES. These payments are referred to in this Indictment as "kickbacks."

4. Other corporations and individuals, not charged in this Indictment, participated as co-conspirators in the conspiracy charged in this Indictment and performed acts and made statements in furtherance of it.

U.S. v. DETLOFF MARKETING AND ASSET MANAGEMENT, INC., *et al.*

5.  Whenever in this Indictment reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or other representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

## GENERAL ALLEGATIONS

At times relevant to this Indictment:

### Relevant Entities and Individuals

6.  **DETLOFF MARKETING** was a corporation organized and existing under the laws of Minnesota, with its principal places of business in Eden Prairie, Hopkins, and Minnetonka, Minnesota. **DETLOFF MARKETING** was in the business of marketing and managing REO properties owned or controlled by the VICTIM COMPANIES. Throughout the conspiracy, **DETLOFF MARKETING** engaged in acts, deeds, or transactions by or through Defendants **JEFF DETLOFF** and **LORI DETLOFF** while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

7.  **JEFF DETLOFF**, a resident of Minnesota, was a Real Estate Salesperson (commonly called a "realtor") or Real Estate Broker (commonly called a "broker") licensed with the State of Minnesota. For purposes of this Indictment, "realtor" refers to both realtors and brokers. **JEFF DETLOFF** was an officer and agent of Defendant **DETLOFF MARKETING** and other companies associated with his real-estate business. **JEFF DETLOFF** was the husband of Defendant **LORI DETLOFF**. Throughout the conspiracy,

3

U.S. v. DETLOFF MARKETING AND ASSET MANAGEMENT, INC., *et al.*

**JEFF DETLOFF** acted within the scope of his agency and employment, and for the benefit of Defendant **DETLOFF MARKETING**.

8.    **LORI DETLOFF**, a resident of Minnesota, served as an accountant and did the bookkeeping for Defendant **DETLOFF MARKETING** and other companies associated with **JEFF DETLOFF**. **LORI DETLOFF** was an officer and agent of Defendant **DETLOFF MARKETING** and other companies associated with **JEFF DETLOFF's** real-estate business. She was the wife of Defendant **JEFF DETLOFF**. Throughout the conspiracy, **LORI DETLOFF** acted within the scope of her agency and employment, and for the benefit of Defendant **DETLOFF MARKETING**.

## The REO Industry

9.    Throughout the conspiracy, the VICTIM COMPANIES owned or controlled REO properties, also known as foreclosure properties. Many of these REO properties were located within the State and District of Minnesota. After foreclosure, repairs and routine maintenance were often necessary before a REO property could be re-sold. To manage such repairs and maintenance, the VICTIM COMPANIES relied on realtors who specialized in managing and selling REO properties. These realtors were commonly referred to as "REO realtors." After any repairs and maintenance, REO realtors sold REO properties on behalf of the VICTIM COMPANIES. REO realtors received a commission from the VICTIM COMPANIES after selling such REO properties.

10.    In some circumstances, the VICTIM COMPANIES required the REO realtor to obtain independent bids from multiple contractors in a competitive process before assigning work to particular contractors. In other circumstances, the VICTIM

U.S. v. DETLOFF MARKETING AND ASSET MANAGEMENT, INC., *et al.*

COMPANIES allowed REO realtors to assign work to particular contractors without obtaining such bids. In all circumstances, the VICTIM COMPANIES relied on REO realtors to assign work to maintenance and repair contractors based on the best interest of the VICTIM COMPANIES.

11. REO realtors, including **JEFF DETLOFF**, were required to abide by all guidelines issued by the VICTIM COMPANIES, as well as all applicable regulations, statutes, and ethical codes. Among other things, these guidelines, regulations, statutes, and ethical codes (a) prohibited REO realtors from soliciting or receiving kickbacks; and (b) required REO realtors to disclose to the VICTIM COMPANIES any payments received by a REO realtor in connection with any property owned or controlled by the VICTIM COMPANIES.

### The Scheme to Defraud the VICTIM COMPANIES

12. Throughout the scheme, **DETLOFF MARKETING** managed and marketed REO properties on behalf of the VICTIM COMPANIES. Throughout the scheme, **DETLOFF MARKETING** engaged in acts, deeds, or transactions by or through its officers, directors, agents, employees, or other representatives – including **JEFF DETLOFF** and **LORI DETLOFF** – while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

13. Throughout the scheme, **JEFF DETLOFF**, acting within the scope of his agency and employment, and for the benefit of **DETLOFF MARKETING** and various other companies, worked as a REO realtor, managing and selling REO properties for the VICTIM COMPANIES within the State and District of Minnesota and elsewhere. **JEFF**

U.S. v. DETLOFF MARKETING AND ASSET MANAGEMENT, INC., *et al.*

**DETLOFF** managed repair and maintenance of REO properties for the VICTIM COMPANIES. In this capacity, **JEFF DETLOFF** was able to choose, or influence the choice of, which contractor was assigned to perform the repair and maintenance work on a given REO property for the VICTIM COMPANIES. Also in this capacity, **JEFF DETLOFF** submitted and caused to be submitted bids and invoices from repair and maintenance contractors for work on a given REO property for the VICTIM COMPANIES.

14. Throughout the scheme, **LORI DETLOFF** served as an accountant for **DETLOFF MARKETING** and various other companies, and acted within the scope of her agency and employment, and for the benefit of **DETLOFF MARKETING** and those companies. **LORI DETLOFF** controlled when **DETLOFF MARKETING** sent payments to contractors for work performed on REO properties for the VICTIM COMPANIES. **LORI DETLOFF** received invoices from contractors who were used by the Defendants for work performed on REO properties owned or controlled by the VICTIM COMPANIES. She also sent invoices to these contractors, including invoices for kickbacks. **LORI DETLOFF** tracked payments by the Defendants, including payments to contractors used by the Defendants for work performed on REO properties owned or controlled by the VICTIM COMPANIES. She also tracked payments received by the Defendants, including kickbacks. These invoices and payments included invoices and payments sent and received by **DETLOFF MARKETING**.

15. Beginning in or about September 2007, the **DETLOFFS** put the scheme into effect by telling various contractors that the contractors were required to pay kickbacks (usually called "management fees") in order to receive, or to continue to receive, work on

U.S. v. DETLOFF MARKETING AND ASSET MANAGEMENT, INC., *et al.*

REO properties owned or controlled by the VICTIM COMPANIES and managed by the **DETLOFFS**. The **DETLOFFS** then steered work on those REO properties to contractors who paid kickbacks. The Defendants submitted and caused to be submitted false and fraudulent bids and invoices to the VICTIM COMPANIES, which included the kickback amounts in the price of the work charged to the VICTIM COMPANIES.

16. During, and in furtherance of, the scheme: (a) **JEFF DETLOFF** used his position as a REO realtor to steer work on such properties to contractors who agreed to pay kickbacks; (b) **LORI DETLOFF** demanded the specific kickbacks from contractors and tracked whether the specific kickbacks were paid; (c) the **DETLOFFS** referred to the kickbacks by various terms, including "management fees," to conceal the true nature of these kickbacks; (d) the Defendants knowingly concealed the kickbacks by submitting and causing to be submitted to the VICTIM COMPANIES false and fraudulent bids, estimates, and invoices that misrepresented the value of work received by the VICTIM COMPANIES; and (e) when necessary, **JEFF DETLOFF** procured sham bids and knowingly submitted those sham bids to the VICTIM COMPANIES to create a false appearance of competitive bidding and to conceal the fact that he steered work to contractors who paid kickbacks.

17. When necessary, the **DETLOFFS** took measures to ensure certain contractors paid the kickbacks demanded by the **DETLOFFS**. These measures included (a) threatening to withhold or actually withholding payments to contractors for work already done by those contractors; and (b) threatening to stop or actually stopping new work assignments to contractors.

U.S. v. DETLOFF MARKETING AND ASSET MANAGEMENT, INC., *et al.*

18. **JEFF DETLOFF** induced certain contractors to recruit other contractors into the scheme for the purpose of using those other contractors to create the false appearance of competitive bidding by providing sham bids. At least one of the recruited contractors paid kickbacks in exchange for receiving work from the Defendants.

19. The purpose of the scheme was for the conspirators fraudulently to obtain compensation associated with managing, repairing, maintaining, and selling REO properties owned or controlled by the VICTIM COMPANIES.

20. The Defendants and their conspirators (a) took steps to conceal the nature and existence of the kickbacks from the VICTIM COMPANIES, (b) did not disclose the kickbacks to the VICTIM COMPANIES, and (c) made affirmative misrepresentations to the VICTIM COMPANIES, all so that the kickbacks would not be detected and so that the Defendants would continue to receive ongoing assignments associated with the managing, marketing, repair, maintenance, and sale of REO properties owned or controlled by VICTIM COMPANIES. The Defendants were at all times aware of the misrepresentations and concealments made by the contractors in the bids, estimates, and invoices submitted to the VICTIM COMPANIES.

## COUNT 1
(Conspiracy to Commit Mail and Wire Fraud Affecting a Financial Institution)

21. The Grand Jury re-alleges and incorporates by reference Paragraphs 1 through 20 of this Indictment, as if fully set forth herein.

22. From in or about September 2007 and continuing through in or about June 2015, in the State and District of Minnesota and elsewhere, the Defendants,

U.S. v. DETLOFF MARKETING AND ASSET MANAGEMENT, INC., *et al.*

**DETLOFF MARKETING AND ASSET MANAGEMENT, INC.,
JEFFERY J. DETLOFF, and
LORI K. DETLOFF,**

did knowingly, voluntarily, and intentionally combine, conspire and agree with each other, and with other persons known and unknown to the Grand Jury, to commit the offenses of mail fraud and wire fraud by engaging in the scheme and artifice described above to defraud and to obtain money and property from VICTIM COMPANIES (including entities that are financial institutions within the meaning of 18 U.S.C. § 20) by means of materially false and fraudulent pretenses, representations, promises, and material omissions; and for the purpose of executing and attempting to execute such scheme and artifice (a) caused to be sent, delivered, and moved by the United States Postal Service and private and commercial interstate carriers various mailings, items, and things, in violation of Title 18, United States Code, Section 1341, and (b) caused the transmission in interstate commerce, by means of wire communications, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS 2-5
(Mail Fraud Affecting a Financial Institution)

23. The Grand Jury re-alleges and incorporates by reference Paragraphs 1 through 20 of this Indictment, as if fully set forth herein.

24. On or about the following dates, in the State and District of Minnesota and elsewhere, the Defendants,

U.S. v. DETLOFF MARKETING AND ASSET MANAGEMENT, INC., et al.

**DETLOFF MARKETING AND ASSET MANAGEMENT, INC.,
JEFFERY J. DETLOFF, and
LORI K. DETLOFF,**

and others known and unknown to the Grand Jury, aiding and abetting, and being aided and abetted by, each other, having knowingly and intentionally devised and participated in the scheme and artifice described above to defraud and to obtain money and property from the VICTIM COMPANIES (including entities that are financial institutions within the meaning of 18 U.S.C. § 20) by means of materially false and fraudulent pretenses, representations, promises, and material omissions, and for the purpose of executing and attempting to execute such scheme and artifice, did knowingly cause to be sent, delivered, and moved by the United States Postal Service and private and commercial interstate carriers various mailings, including, but not limited to, the following:

| COUNT | ON OR ABOUT DATE | MAILING DETAILS |
|---|---|---|
| 2 | 11/5/2013 | Mailing from Contractor A to Detloff Marketing containing invoice # 377 in the amount of $1,350 |
| 3 | 8/2/2013 | Mailing from Contractor A to Detloff Marketing containing invoice # 337 in the amount of $700 |
| 4 | 1/3/2013 | Mailing from Detloff Marketing to Contractor B and Contractor B's company containing invoice # 35608 in the amount of $760.01 |
| 5 | 1/5/2010 | Mailing from Detloff Marketing to Contractor C containing invoice # 27527 in the amount of $1,676.86 |

All in violation of Title 18, United States Code, Section 1341 and Title 18, United States Code, Section 2.

10

U.S. v. DETLOFF MARKETING AND ASSET MANAGEMENT, INC., *et al.*

## COUNTS 6-9
(Wire Fraud Affecting a Financial Institution)

25.  The Grand Jury re-alleges and incorporates by reference Paragraphs 1 through 20 of this Indictment, as if fully set forth herein.

26.  On or about the following dates, in the State and District of Minnesota and elsewhere, the Defendants,

**DETLOFF MARKETING AND ASSET MANAGEMENT, INC.,
JEFFERY J. DETLOFF, and
LORI K. DETLOFF**

and others known and unknown to the Grand Jury, aiding and abetting, and being aided and abetted by, each other, having knowingly and intentionally devised and participated in the scheme and artifice described above to defraud and to obtain money and property from the VICTIM COMPANIES (including entities that are financial institutions within the meaning of 18 U.S.C. § 20) by means of materially false and fraudulent pretenses, representations, promises, and material omissions, and for the purpose of executing and attempting to execute such scheme and artifice, did knowingly cause to be transmitted in interstate commerce certain writings, signs, signals, pictures, and sounds by wire, including, but not limited to, the following:

| COUNT | ON OR ABOUT DATE | WIRE DETAILS |
|---|---|---|
| 6 | 11/5/2013 | Wiring related to deposit of check # 20236 from Contractor A's company for $2,796.50 into a Detloff Marketing account at Bremer Bank, NA |

U.S. v. DETLOFF MARKETING AND ASSET MANAGEMENT, INC., *et al.*

| COUNT | ON OR ABOUT DATE | WIRE DETAILS |
|---|---|---|
| 7 | 8/5/2013 | Wiring related to deposit of check # 20200 from Contractor A's company for $3,776.60 into a Detloff Marketing account at Bremer Bank, NA |
| 8 | 1/31/2013 | Wiring related to deposit of check # 3469 from Contractor B's company for $760.01 into a Detloff Marketing account at Bremer Bank, NA |
| 9 | 1/8/2010 | Wiring related to deposit of check # 10828 from Contractor D's company for $1,228.76 into a Detloff Marketing account at Bremer Bank, NA |

All in violation of Title 18, United States Code, Section 1343 and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATIONS

27.   The Grand Jury re-alleges and incorporates by reference Counts 1-9 of this Indictment, as if fully set forth herein, for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 18, United States Code, Section 982(a)(2)(A), and Title 28, United States Code, Section 2461(c).

28.   Upon conviction of the offenses alleged in Counts 1-9 of this Indictment, the Defendants shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), or Title 18, United States Code, Section 982(a)(2)(A), in conjunction with Title 28, United States Code, Section 2461(c), all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses charged in Counts 1-9, respectively.

U.S. v. DETLOFF MARKETING AND ASSET MANAGEMENT, INC., *et al.*

29.  If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____     _____
DATED                                                      FOREPERSON

U.S. v. DETLOFF MARKETING AND ASSET MANAGEMENT, INC., *et al.*

| | |
|---|---|
| MAKAN DELRAHIM<br>Assistant Attorney General<br>Antitrust Division | FRANK J. VONDRAK<br>Chief, Chicago Office<br>Antitrust Division |
| | |
| RICHARD A. POWERS<br>Acting Deputy Assistant Attorney General<br>   for Criminal Enforcement<br>Antitrust Division | ANDREW K.M. ROSA, Hawai'i Bar No. 6366<br>CHESTER C. CHOI, California Bar No. 268410<br>KEVIN C. CULUM, Montana Bar No. 3460<br>MOLLY A. KELLEY, Illinois Bar No. 6303678<br>Trial Attorneys<br>U.S. Department of Justice<br>Antitrust Division |
| MARVIN N. PRICE, JR.<br>Director of Criminal Enforcement<br>Antitrust Division | Chicago Office<br>209 S. LaSalle Street, Suite 600<br>Chicago, IL 60604 |